May it please the court, my name is Luis Aviles and along with my co-counsel Jorge Izquierdo we represent the appellants in this appeal. We would like to reserve three minutes for rebuttal if it pleases the court. Thank you. Since the filing of the briefs in this appeal the Supreme Court of the United States issued the decision of Chatham v. Troyes, 134, Supreme Court Reporter 1058, which affirmed the decision of Brolin v. Green, citing our brief as applicable to this appeal. Troyes is dispositive of this appeal, Your Honors, and its correct application should lead this court to find that it does not have jurisdiction over this case, this class action, and the proper course of action is to remand this case to the courts of Puerto Rico. In our brief we asked this court to adopt the reasoning Brolin v. Green in answering the following question. Whether the Securities Litigation Uniform Standards Act, or SLUSA for short, precludes, as a preclusion statute, a Puerto Rico law class action brought by Puerto Rico resident shareholders of a Puerto Rico registered investment company whose shares of common stock are not traded in any national exchange by reason of the fact that such investment company, local investment company, may happen to hold its investment portfolio of some nationally traded securities or covered securities, as they are called under SLUSA. Under Troyes, the answer to that is that such class action is not precluded under SLUSA. As we all know, SLUSA prohibits the bringing of covered securities class actions based on violation of state law where plaintiffs allege misrepresentation or omission of a purchase or sale of a covered security. And again, covered securities are nationally traded securities or securities issued by mutual funds or investment companies registered under the 1940 Act. But isn't your problem the in-connection language? And that the in-connection language allows the court to look beyond the form of the fund that you set up and to look to the actual holdings that the fund holds, which you concede rightly so, so you include covered securities? Exactly, Your Honor. Troyes, the dispositive language in Troyes, and I quote from page 1066 by voice of Justice Breyer, is that a fraudulent misrepresentation under SLUSA, a fraudulent misrepresentation or omission is not made in connection with such a purchase or sale of a covered security unless it is material to a decision by one or more individuals of the class other than the fraudster, in this case the fund, to buy or sell a covered security. The problem, however, is that you've taken that narrow sentence. I don't blame you. It's a sentence that helps you. But there's other language in Justice Breyer's opinion that points the other way. And this same debate was played out a couple of months ago before the Second Circuit, after Troyes, on a petition for rehearing in In re Herald. And the Second Circuit was asking, and they said, in effect, that as long as there's a close enough nexus between the alleged fraud and the publicly traded shares, that's what's dispositive. Here, you've got allegations in your complaint which indicate quite clearly that the fraud of which you're complaining is in connection with the way in which investments were carried out or not carried out. That's precisely the situation the Second Circuit had post-Troyes in the Herald case. That is incorrect, Your Honor. The allegations in our case are that this fund, in the investment objectives and fundamental policies, they announced in the prospectus that they would invest at least 75% of the total assets of this stock in debt securities issued by a bank in Spain regarding European markets, corporate bond indices that are not themselves corporate securities. The language in Troyes says, unless it is material to the decision, these fund shareholders invested in this mutual fund in Puerto Rico, not because they wanted to buy shares of Banco Popular, preferred shares of Banco Popular. Everyone knows in Puerto Rico what Banco Popular is. They could buy those shares themselves. What made this fund different is that these investors would be exposed to the corporate bond markets via an instrument issued by a bank in Spain, Banco Inglés Vizcaya Gentaria. That's what made it different. These people were told, and I think 75% is material, Your Honors, that they were, the assets of these funds, 75% of them would be invested in such securities that by themselves are not corporate securities. The fact that they invested in some corporate securities was not material. And in fact, in the complaint, the allegations of fraud in this complaint, in the direct claims against the fund and the directors, are based solely on this representation. And I invite you to look again at pages 154 to 164 of the appendix, where nowhere is mentioned the fact that these people wanted to buy corporate securities. Yes, the prospectus says that they could buy some preferred stock, but it said that 75% of it would be in corporate bonds of European indices, etc. So I think we need to look at Troyes and say, what is the intent? And the intent comes from the complaint. So you're saying, you essentially are saying that the covered securities are negligible compared to the expectation that non-covered securities were the primary part of the representations made here. I think what Justice Breyer is doing in Troyes is that they are aligning this host of, in different wordings, for what the connection means. And they said, look, you have to look at the intent of these people when they bought. This case has not been litigated. So the intent has to be derived from the complaint itself. And the complaint, the only fraud representations they made are in connection with these corporate bond securities issued by a Spanish bank that were supposed to arrange, where they said, they promised in the investment objective that 75% of its assets would be invested in those securities. And I think that's material. I think that these people could have invested in other mutual funds. They could have bought the shares of Popularity in their own accounts. It's very easy to do. What they could not find, because they were not a qualified buyer, were those bonds that they wanted to invest through. They wanted to use this fund to expose their clients to that market that are not We need to look at the plain language of Troyes. And the police here, they're inviting this court to interpret Troyes, which was decided three months ago, and revive an interpretation of the in connection with language of LUSA adopted by the Second Circuit in cases before, when that sort of interpretation, I think, was squarely, squarely rejected by the Supreme Court in Troyes. I think we need to look at the facts. We're talking about uncovered security. And the reason these investors invested were because they were promised to, this fund would invest in yet another uncovered security, corporate bonds of Spain, European, and global markets. 75%. And I think that was a material decision when they invested. The representations, what I'm concerned with is whether we have an allocation question. According to what you're saying, the investors were told 75% were going to be put in these funds, and 25% were going to be put in covered security? No, they said that securities of preferred stocks, they didn't even mention the word nationally traded securities. They didn't mention that in the prospectus. I know that. But if you read the prospectus, you would expect that at least that 25% would be in covered security. Yeah, but I think that's, yeah. And what your complaint says is that there's fraud because they never followed through on the investment strategy. Strategy is the term that I use. Objective. Well I think the complaint says strategy, alright? Mentioned in the, described in the prospectus. So what I don't get, if the fraud is that they promised you 75-25, and instead they flipped the proportions. They invested 75 in the covered securities, which turned out to be layman bonds that were worthless, alright? And invested much less in the uncovered securities. Isn't that, isn't the fraud still in connection with covered security? No, it is not, because what they promised, you know, we're not talking about a 10-B case here, your honors. We have the Puerto Rican Investment Company Act of 1954. It's the only investment company's act of a state jurisdiction in the United States. These funds are exempt from registration from the Forty Act. So the pervasive scheme is what the Puerto Rico law says, and that is the Puerto Rican Investment Company Act. They have to invest. But wait a minute, but we, but our first concern has got to be less what the Puerto Rico Act says and more what SLUSA says, alright? And SLUSA has been, was, has been considered by most courts to be coterminous with 10-B. Yeah, I agree, but the thing is that, I think if, my reading of Troy's and Justice Breyer's opinion is that you have to look at what the investors did when they invested in this fund, what made it different, what they made their decision to invest in this fund. It was not because they wanted to buy popular chairs. It was because they wanted to buy 75% of their stock in corporate bonds issued by a Spanish bank, and that didn't happen. And that's a good thing, but they didn't do it because they could not do it. And we haven't litigated that issue, your honors. But I think... But you want us to focus on intent rather than purpose, right? It's the intent of the, that's what it says. It's like, that's what the language in Troy says. Your honors, if this case has great policy issues here, because these funds, there are over $20 million in Puerto Rico fund money, Puerto Rican investors in these mutual companies. The law says that 67% has to invest in Puerto Rico securities and 33% in U.S. securities. This fund got an exemption from that requirement of the law to invest 75% in these corporate global bonds and the rest according to the law. What I'm telling you is that these shareholders cannot allege fraud against the board of directors or the funds themselves because they cannot avail themselves of the remittance of the 40 Act. And if we go to Puerto Rico and these funds buy one covered security or 10% in covered securities, and we remove this case to federal court to be dismissed because the dismissal is automatic, it could be even sue a sponsor in some cases. I've said, these people will not be able to invest in these funds because there is no legal security. They will never be able to carry class action claims against the fraudsters in these funds. And as you know, recently in August of 2013, the Puerto Rico bond market plummeted. And there will be hundreds of lawsuits in Puerto Rico claiming fraudulent representations by these people. And they will be easily removed and dismissed in federal court. So they will not have an avenue to carry out a class action remedy of a court that is purely local. So this is a purely local issue. Thank you. May it please the court, my name is Michael Flynn from the law firm of Davis Polk and Wardwell here on behalf of Appalee PricewaterhouseCoopers. Counsel for Appalee San Juan Management and I have agreed to split time. I'm going to handle the Seleucid issues and my colleague will cover the broader waiver issues that stem from the repeated failure of the appellants to challenge below the motions to dismiss. With respect to the application of SLUSA, we submit that the ruling below should be affirmed. Plaintiffs made one and only one argument against the application of SLUSA below. And that was in connection with the motion to remand. And that is that SLUSA could only be applicable if the shares of the fund that they purchased were covered securities. In its dismissal order, the district court made clear that plaintiffs were making that one and only one argument. And importantly, they also made, the district court also made clear that the plaintiffs did not contest the basic facts on which our arguments for SLUSA preclusion were based. To quote the district court, plaintiffs do not deny having alleged in their complaint that the defendants misrepresented and omitted material information about the fund's investment objectives, level of diversification, and anticipated investments. The court further noted that these misrepresentations related to various covered securities. Plaintiffs do not contest the court's holding in that regard, nor do they argue that the defendants' alleged misrepresentations did not sufficiently coincide with covered securities. Nor do plaintiffs deny that the fund actually purchased and their claim for damages. The only argument is that SLUSA does not apply because the fund's common stock is not itself a covered security. That one and only argument was correctly rejected by two separate district judges below. Both before and after the Supreme Court's decision in the Trois case, it is clear that the purchase of a covered security by the plaintiff is not a prerequisite to the application of SLUSA. Indeed, Trois confirms that plaintiffs themselves need not purchase covered securities in order for SLUSA to apply. Just last week, as Judge Selya mentioned, the Second Circuit issued an opinion discussing the Supreme Court's opinion in Trois. The Second Circuit determined that SLUSA applied to claims of investors in a fund which had invested with Madoff, even though the shares of the fund were not themselves covered securities. The situation in Trois was very different than the situation in Herald and the situation in this case. In Trois, plaintiffs there purchased fixed-rate CDs. The plaintiff's investment was in no fashion an attempt to try to invest directly or indirectly in covered securities. Here, as in Herald, plaintiffs alleged that they were induced to make investment decisions based on misstatements and omissions regarding the investment strategy of the fund. That, as in Herald holds, is sufficient to satisfy the in-connection-with requirement because the diversification strategy included various covered securities. Now, for the first time on appeal, appellants argue that the in-connection-with requirement is not satisfied because the alleged misstatements and omissions underlying the So if the prospectus indicated that 1% would be covered in covered funds and 99% in the European market, you would say that's enough? Well, I think the test, I think there's a misapplication of the materiality standard in this context by counsel for appellants. The test under SLUSA, and as Trois makes clear, is that the decision to invest had to be material to the purchase or sale of a covered security. It doesn't say that you have to look at how many covered securities versus how many non-covered securities. As long as there is a fraud or misrepresentation or omission in connection that's material to the purchase or sale of a covered security, SLUSA is satisfied. But they're saying the fraud was in connection with the purchase of a non-covered security. That's their argument. They're saying they were promised something materially different, which is not a covered security and didn't get it. They're saying that's the fraud. Well, what they're saying, Your Honor, is clear from their briefs at page 15 and 29, that they themselves characterize their action as one making anti-fraud claims having to do with misleading statements regarding the fund's investment objectives and fundamental investment strategy and policies. Those allegedly fraudulent investment objectives and policies provided that the fund would pursue a diversification strategy that included investments in several categories of covered securities, including preferred stock, securities of 40-act companies, exchange-traded options and futures, repurchase agreements related to covered securities. If you look at pages 186, 199, 201, 202, and 204 of the appendix, that is clear. There's no dispute that that is what the prospectus said. In fact, the district court in denying the motion to remand observed that a plain reading of the fund's prospectus reveals that the fund's anticipated investments included various covered securities. That's at page 4 of the remand denial order. Rather than pursue the articulated investment strategy set forth in the prospectus, plaintiffs allege that defendants failed to disclose that the fund's managers fraudulently pursued a different strategy, one that caused the fund to abandon the articulated diversification strategy involving covered securities by investing in toxic Lehman assets and not investing in the notes that Counsel for Appellant mentioned earlier. That is directly contrary to the diversification strategy involving covered securities that's laid out in the prospectus. Just as in the Herald case recently decided by the Second Circuit, plaintiffs here allege that they were fraudulently induced to invest in shares of a fund by misrepresentations and omissions about the fund's investment strategy to purchase, among other things, covered securities. Applying SUSA to such a situation as the Second Circuit just decided last week is fully consistent with choice. It's also fully consistent with the Eleventh Circuit case of Instituto versus Merrill Lynch in which securities were not purchased even though the defendant in that case was alleged to have represented that they would purchase covered securities and in that case they were not purchased and the Eleventh Circuit determined that because the covered securities were marketed to the plaintiffs, the in-connection with requirement was satisfied. We think, Your Honors, that in this particular case, given the arguments made below, given the language of choice and the recent decision of the Second Circuit as well as other decisions such as Dabbitt and the Instituto case, and by the way, the Supreme Court in the choice case made clear that Dabbitt was not modified and it's clear, I think, based on the nature of the allegations and the findings of the district court below construing those allegations that the in-connection with requirement here is satisfied and we believe on that basis the decision below should be affirmed. If the Court has no other questions, I'll yield the balance of my time to my colleague. May it please the Court, Eric Perez Ochoa on behalf of Appellees, San Juan Asset Management and Jose Vizcarrondo. I will focus my argument on one significant aspect of this case, that is plaintiff's failure to oppose any of the motions to dismiss that led to the dismissal in this particular case. Isn't there argument that it would be futile under Slusa and that in fact it's because their ultimate issue was the remand, it didn't belong in federal court in the first place, not the substantive challenge to Slusa? Well, Judge, Your Honor, the fact is that that record of inattention, regardless of their argument, cannot be ignored. No, it's not inattention. Besides Judge McConnell's view, their position all along has been that this case ought to be remanded to state court. They have a Rule 11 obligation not to make insupportable allegations to the district court, so they haven't said that if they're wrong on jurisdiction that the case shouldn't be dismissed. They've conceded that. But what they've consistently maintained is that this case ought to be remanded. So it troubles me that you seem to fault them. You would have wanted them to file an objection which they could not, in good faith, have filed. Your Honor, the position of Appellees and Wants and Management and Ms. Garrondo is that yes, there were motions to dismiss that were filed. That's undisputed. They had an opportunity to file oppositions. They did not. What oppositions could they file? Their position is, this case doesn't belong here. They could have filed a... They've made that very clear by their motion to remand and their request to certify that question. That is true, Your Honor. And you weren't at any point prejudiced or disadvantaged because you didn't know or understand their position. Judge Sorreso wasn't disadvantaged. Judge McAuliffe wasn't disadvantaged. And so now it seems to me, with all due respect, that you're trying to pounce on a technicality and take advantage of the fact that they acted in a very loyally manner in not burdening the court with insupportable allegations. Well, Judge, that may well be the case and I need to concede that that could be true. However, that does still have an effect, in our view, in the standard of review to be Because if the arguments were not waived, as the court seems to suggest, of course, then at the very least they were forfeited. There were no arguments either waived or forfeited with respect to the motion to remand. That's what this appeal was about. But Your Honor, they're not appealing from the motion to remand. No, they're appealing... They're appealing from the judgment of dismissal that was entered on March 15, 2013. They're appealing from the judgment, but that appeal brings up with it all of the intermediate orders and the only order that they're objecting to in substance is the motion to remand, because if that motion was improperly denied, the dismissal motion becomes moot. You know it, I know it, the district judge is in the way. We continue to maintain, Your Honor, and we understand the court's position, that there is a waiver forfeiture, at the very least forfeiture argument here, that needs to be taken into consideration, because of the fact that they did not oppose the motion to dismiss, they did not file any responses to the several motions by the defendant seeking that motion to dismiss to be deemed unopposed. They did not file any post-judgment motions seeking relief under 1590 or 60B, challenging the dismissal, and quite frankly, this is a case that's very similar to Palmer Lew and to the case of Torres-Fuentes, where this court pretty much determined that on the basis of a motion to dismiss under 12B-6 that goes unopposed, you know, there's a waiver rule of local rule 7B of the local rules of Puerto Rico, there's a raise or waive rule that may apply, and the principle that a party who fails to object to a motion to dismiss must raise a claim of error by filing the appropriate post-judgment motion or forfeit the right to raise these claims before this court, as decided in Rocafort v. IBM. And that, you know, simply the position is that, you know, this court should not put flesh in plaintiff's bone, even if that might seem a bit unsympathetic, and that would be the position of Appellee San Juan Asset Management and Miscarrondo. Thank you. All right. Oh, I'm afraid he's got three minutes. Your Honor, there's nothing further. Thank you for your time. Could I just ask you one question to follow up on something Judge Thompson asked? If the prospectus had said 10 percent would be invested in, for lack of, I wouldn't say this, but in non-covered securities, if 10 percent, would your argument be the same or does your argument rest on the fact that such a substantial amount was non-covered claims to defeat the in-connection portion? My argument doesn't have to do with the 75 percent. My argument has to do with the fact that what is this product, you know, what is this fund about and why people invest in these funds? For instance, if you have a local Puerto Rico investment company, and the reason people do this in Puerto Rico is because it has tax advantages to Puerto Ricans, okay? If you have Puerto Rico investment companies that said in its investment objective, we're going to track the S&P 500 index, all of them covered securities, SLUSA would apply. What I'm saying here is that the fund itself is not a covered security, and Justice Breyer is very clear that we're talking here about uncovered securities and the court should not worry too much about uncovered securities, but the fact is that whatever says the diversification statute, they said 75 percent of the assets would be invested in the global corporate bond market, and that didn't happen, and that's what, that's the only complaint that we're raising in the complaints in the pages that I just quoted. So, I think that's what makes the difference in this case. But what do you say to your brother's argument that the only argument that you made in the district court was that SLUSA didn't apply because the shares of San Juan Asset Management itself weren't publicly traded? Well, we filed a motion for remand, and the case says that if only one element of this four elements of SLUSA doesn't apply, then it doesn't apply. We said, we don't have a covered security. We never thought that we had to raise the in-connection with language because of the 75 percent, and to be honest, you know, this case was filed in local court because we didn't have to bill ourselves or any remit under the 40 Act. But on the motion for remand, you only apparently argued this one theory, all right? And then when that motion to remand got denied, you then moved for 28 U.S.C. 1292B certification and you again in that certification asked only to have this one question certified. Why isn't that a waiver of other SLUSA-related questions that weren't waived below? In the 1292B motion, I think we mentioned the in-connection with requirement. We were answering Judge McAuliffe's and Judge Cereso's reasoning, legal reasoning, and we don't think we waived that argument, Your Honors, but let me point out briefly before I finish. In the case that we cited, Kircher v. Spotman Fonz, at page 64, Justice Souter said, and the time is up, a motion to remand claiming the action is not precluded must be seen as posing a jurisdictional issue. We've always said that this is a jurisdictional issue. Even though, you know, I'm participating in this appeal only, but whatever it says down in the motions down, if you raise a motion to remand saying that SLUSA doesn't apply, you don't waive the issues. The issues are always present. And I, you know, we urge you, Your Honors, to consider this case and the policy implications of this case for these plaintiffs and potential plaintiffs in Puerto Rico. Thank you.